ROB BONTA, State Bar No. 202668
Attorney General of California
VANESSA C. MORRISON, State Bar No. 254002
Supervising Deputy Attorney General
RAFAEL J. HURTADO, State Bar No. 292694
JAMES POTTER, State Bar No. 166992
Deputy Attorneys General
  600 West Broadway, Suite 1800
  San Diego, CA 92101
  Telephone: (619) 321-5780
  Fax: (916) 732-7920
  E-mail: Rafael.Hurtado@doj.ca.gov
*Attorneys for Plaintiffs the California Department of Toxic Substances Control and The Toxic Substances Control Account*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL AND THE TOXIC SUBSTANCES CONTROL ACCOUNT,**<br><br>Plaintiffs,<br><br>v.<br><br>**SUZANNE S. LYON, RUSSELL R. TONDA, AND DIANE M. TONDA,** | Case No.<br><br>**COMPLAINT FOR RECOVERY OF RESPONSE COSTS; DECLARATORY RELIEF; and SUPPLEMENTAL STATE LAW CLAIMS**<br><br>(Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607(a) and 9613(g)(2), and supplemental state law claims) |

Plaintiffs, the California Department of Toxic Substances Control ("DTSC") and the Toxic Substances Control Account (collectively referred herein as, "Plaintiffs"), allege as follows:

**INTRODUCTION**

1. This action concerns releases and threatened releases of hazardous substances at and from dry-cleaning operations doing business as Halford's Cleaners ("Halford's Cleaners") located at 941 McHenry Avenue, in the City of Modesto, Stanislaus County, California. Plaintiffs seek recovery of costs and declaratory and injunctive relief regarding Halford's Cleaners, including the horizontal and vertical extent of contamination at any area where any hazardous substance from the Halford's Cleaners has come to be located ("Site").

2. Over the course of several decades, dry-cleaning operations doing business as Halford's Cleaners used and discharged significant volumes of hazardous substances, primarily tetrachloroethylene, which is also known as perchloroethylene or "PCE," into the soil, which in turn contaminated the groundwater and nearby sewer lines.

3. In the First Claim for Relief, Plaintiffs seek to recover costs, including interest, that Plaintiffs have incurred and continue to incur responding to releases and threatened releases of hazardous substances at and from the Site, from the owners of the real property located at 939 and 941 McHenry Avenue, City of Modesto, Stanislaus County, California ("Property"), where Halford's Cleaners is located. The owners of the Property are Suzanne S. Lyon, Russell R. Tonda, and Diane M. Tonda (collectively, "Defendants"). Defendants are "owners of a facility" under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), 42 U.S.C. § 9607(a).

4. In the Second Claim for Relief, Plaintiffs seek declaratory relief, under 28 U.S.C. § 2201 and section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), for a declaratory judgment that each Defendant is liable to Plaintiffs for the response costs Plaintiffs incurred and for any further response costs Plaintiffs incur as a result of any release and/or threatened release of a hazardous substance from Site.

5. In the Third Claim for Relief, as an alternative to the CERCLA section 107(a) claim, and only to the extent any portion of Plaintiffs' response costs are not recovered under that claim, Plaintiffs make a supplemental state law claim to recover from Defendants costs that Plaintiffs have incurred as a result of any release and/or threatened release of any hazardous substance from the Site. Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"), California Health and Safety Code sections 78000, 79650.

6. In the Fourth Claim for Relief, Plaintiffs seek injunctive relief against Defendants concerning the releases and threatened releases of hazardous substances pursuant to a supplemental state law claim under California Health and Safety Code section 78870.

## JURISDICTION AND VENUE

7. This Court has original and exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1331 and section 113(b) of CERCLA, 42 U.S.C. § 9613(b). The Court also has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367(a), because the state law claims form part of the same case or controversy as Plaintiffs' federal law claims in that the state and federal claims arise from common facts relating to the release of hazardous substances and the cleanup of contamination at the Site.

8. Venue is proper in this district under 28 U.S.C. § 1391(b) and section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases and/or threatened releases of hazardous substances into the environment that are at issue occurred in this judicial district.

## PLAINTIFFS

9. DTSC is a public agency of the State of California, organized and existing under California Health and Safety Code section 58000 *et seq*. DTSC has the authority to protect California's people and environment from harmful effects of toxic substances by restoring contaminated resources, enforcing hazardous waste laws, reducing hazardous waste generation, and encouraging the manufacture of chemically safer products. *See, e.g.*, Cal. Health & Safety Code §§ 25100 *et seq.*, 58000 *et seq.*, 78000 *et seq*. DTSC has authority under state law to respond to releases and/or threatened releases of a hazardous substance into the environment, including maintaining sites that had been remediated with federal funding. Cal. Health & Safety

1  Code §§ 78005(c), 78410, 79065. DTSC has authority to take civil or administrative action to
2  require responsible parties to abate releases and/or threatened releases of hazardous substances
3  and to enjoin imminent or substantial endangerment to the public health or welfare or to the
4  environment. Cal. Health & Safety Code §§ 78660, 78870. DTSC has authority under California
5  Health and Safety Code section 58009 to commence and maintain actions and proceedings to
6  enjoin and abate public nuisances.

7      10.   DTSC has the "sole authority to administer the statewide program for the
8  remediation of hazardous waste contamination" at sites identified for remediation under the
9  HSAA. *City of Lodi v. Randtron*, 118 Cal.App.4th 337, 355 (2004). Costs incurred by DTSC in
10 carrying out or overseeing a response or a corrective action shall be recoverable from liable
11 persons. Cal. Health & Safety Code § 79650. In order to protect the public fisc, DTSC strives to
12 recover the costs it incurs in site mitigation removal and remediation work to the greatest extent
13 possible

14     11.   The Toxic Substances Control Account is an account within the State of California
15 General Fund. California Health and Safety Code section 25173.6 establishes the account, and the
16 director of DTSC administers the account. Under California Health and Safety Code section
17 79700, the account shall be a party in any action for recovery of response costs or expenditures
18 under Part 2 of Division 45 of the California Health and Safety Code incurred from the account.

19                                    **DEFENDANTS**

20     12.   On information and belief, Defendant Suzanne S. Lyon is an individual who resides
21 in the city and county of San Francisco, California.

22     13.   On information and belief, Defendant Russell R. Tonda is an individual who resides
23 in Placer County, California.

24     14.   On information and belief, Defendant Diane M. Tonda is an individual who resides
25 in Placer County, California.

26     15.   Each of the Defendants is a current owner of the Site and was an owner at the time
27 there were disposals of PCE and other hazardous substances.

28

16. Each of the Defendants is a "person," as defined by section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## GENERAL ALLEGATIONS

### Ownership and Contamination of the Halford's Facility

17. Commencing in 1948 and continuing to the present, Halford's Cleaners has operated a dry-cleaning business at 941 McHenry Avenue, in the City of Modesto, Stanislaus County, California. In connection with its dry-cleaning business, the operators of Halford's Cleaners used industrial solvents, including PCE.

18. Halford's Cleaners is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

19. On or about August 14, 1974, Suzanne S. Lyon ("Defendant Lyon") and Stephen C. Lyon and Russell R. Tonda and Diane M. Tonda ("Defendants Tondas") purchased the Property where Halford's Cleaners is located. Plaintiffs are informed and believe that Stephen C. Lyon passed away on or about October 4, 2013, and that his widow, Defendant Lyon, continues to own one undivided one-half interest in that Property; and Defendants Tondas continue to own the other undivided one-half interest in that Property.

20. Since purchasing the Property, Defendants have leased the Property to various operators of dry-cleaning businesses over the years, beginning in 1974 and continuing to 2025. Defendants collected rental income from the lease of the Halford's Cleaners property.

21. For a time, Defendants leased the property to Shantilal Jamnadas, who utilized PCE as a dry-cleaning fluid. Plaintiffs are informed and believe and thereon allege Jamnadas' dry-cleaning operations leaked PCE and allowed the PCE to migrate to soil and groundwater. Plaintiffs are informed and believe, and thereon allege, those releases continued at least until the mid-1980s when the operator of Halford's Cleaners purchased new dry-cleaning equipment.

22. Releases of PCE from Halford's Cleaners by operators of dry-cleaning businesses have required responsive actions by state, local, and federal health and safety agencies, including DTSC.

23. Because the United States Environmental Protection Agency ("EPA") funded and conducted response actions at Halford's Cleaners, federal and state law require DTSC to operate and maintain pollution control activities as long as necessary. 42 U.S.C. § 9604(c)(3) (section 104(c)(3) of CERCLA); Cal. Health & Safety Code § 78410 (requiring cooperative agreements with EPA).

**Hazards of PCE**

24. PCE is a "hazardous substance" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. §9601(14).

25. PCE is a toxic chlorinated solvent. In 1978, the National Institute for Occupational Safety Hazards ("NIOSH") recommended that PCE be handled as if it were a human carcinogen. NIOSH, Current Intelligence Bulletin 20: Tetrachloroethylene (Perchloroethylene) https://www.cdc.gov/niosh/docs/78-112/default.html. In the 1980s, the State of California began regulating PCE as a hazardous waste. *City of Modesto v. Dow Chemical Co.*, 19 Cal.App.5th 130, 137 (2018). In 1984, when the Resource Conservation Recovery Act ("RCRA") was reauthorized, its regulations brought "small dry cleaners" under the same requirements as major hazardous waste sources, with respect to PCE. *Id.*

26. PCE is a cleaning solvent used by dry cleaners and in degreasing operations. PCE is a colorless liquid. When released into the soil, PCE may leach slowly to the groundwater. Because it is heavier than water and does not readily dissolve in water, when it is released into groundwater, PCE accumulates at or near the bottom of the aquifer, forming what is known as a dense nonaqueous phase for liquid ("DNAPL"). PCE also has lower viscosity (internal friction) than water. So, it is very mobile and can move quickly to penetrate, for example, small cracks or joints in concrete. PCE is sufficiently volatile that, when released into soil, it diffuses into the soil gas. Given these characteristics, completing remediation of PCE contamination can be extremely difficult and time-consuming.

27. Even though PCE is largely nonaqueous, a small amount will dissolve into groundwater. The California State Water Resources Control Board has set the maximum contamination level ("MCL") for PCE in drinking water at just five (5) parts per billion ("ppb").

California Safe Drinking Water Act, Cal. Health & Safety Code §§ 116270, 116275; Cal. Code Regs., tit. 22, § 64444; see also EPA, Consumer Factsheet on: TETRACHLOROETHYLENE, https://archive.epa.gov/water/archive/web/pdf/archived-consumer-fact-sheet-on-tetrachloroethylene.pdf (setting the federal MCL at 5 ppb also).

28. PCE is a chemical known to the State of California to cause cancer, including cancer of the bladder, liver, and kidney, as well as multiple myeloma and non-Hodgkin's lymphoma. Exposure to PCE can also cause noncancer adverse health effects to the central nervous system (including changes in vision, mood, attention, reaction time and memory), kidneys, liver, immune system, and blood system. PCE may also cause health effects related to the reproduction and development of offspring.

29. On June 8, 2023, the EPA proposed a ban on most uses of PCE with a 10-year phaseout for the use of PCE in dry-cleaning. Perchloroethylene (PCE); Regulation Under the Toxic Substances Control Act (TSCA), 88 Fed. Reg. 12495 (proposed Jun. 8, 2023) (to be codified at 40 C.F.R. pt. 751).

**Discovery of Releases of Hazardous Substances in Groundwater and Sewer Line and Federal Response**

30. In 1984, during routine sampling of municipal water supply wells, the City of Modesto ("City") detected PCE at 16.7 ppb, well in exceedance of state and federal MCLs for drinking water, in Municipal Well ("MW") 11 at the corner of Magnolia Avenue and Mensinger Avenue. Local regulatory agency representatives suspected Halford's Cleaners as the source of the PCE due to its proximity, approximately 1,000 feet southeast of MW 11, and the common use of PCE at dry-cleaning facilities.

31. In April 1985, the Stanislaus County Department of Environmental Resources performed an assessment to isolate the source of the PCE contamination. Groundwater samples collected within a well located 100 feet down-gradient from Halford's Cleaners contained 84.6 ppb of PCE. Soil samples collected at Halford's Cleaners from an area near a dry-cleaning machine had PCE at concentrations of 53,000 and 176,000 ppb, at depths of 16 and 32 inches, respectively. In August 1985, sludge and sediment samples collected by the City from a sewer

line located immediately down gradient of the sewer lateral connected to Halford's Cleaners was found to contain PCE at a concentration of 1,360 µg/kg.

32. In 1990, the California Regional Water Quality Control Board ("RWQCB") conducted a soil gas investigation to delineate potential contaminant plumes associated with the City's MWs 11, 14, and 21. The sampling results suggested that the source of the PCE in MW 11 included leaks directly from a dry-cleaning machine at Halford's Cleaners.

33. On March 31, 1989, EPA placed the Site on the National Priorities List, 54 Fed. Reg. 13296, 13305, which is a national list of hazardous waste sites posing the greatest threat to human health and welfare and the environment. The National Priorities List was established pursuant to Section 105(a) of CERCLA, 42 U.S.C. § 9605(a).

34. In May and June 1990, EPA installed an interim soil vapor extraction ("SVE") system and a groundwater pump and treat system at the Site.

35. On September 25, 1990, the EPA issued an Administrative Order to property owners Steven Lyon, Susan Lyon, Russell Tonda, and Diane Tonda, and operator Shantilal Jamnadas, as the potential responsible parties under CERCLA.

36. In 1991, the City of Modesto installed a wellhead granular activated carbon ("GAC") system on MW 11 to remove the PCE contamination from the drinking water provided by the well.

37. In 1996, EPA began a remedial investigation and a feasibility study to further characterize contamination at and from the Site and to develop a remedy to eliminate the risk to public health and safety.

38. In September 1997, the EPA prepared an Interim Record of Decision ("IROD") based on an analysis of alternatives presented in the feasibility study completed earlier that year. EPA included in the IROD provisions to collect additional data and in order to provide additional source control. The IROD provided that: it was "not intended to fully address the statutory mandate for permanence and treatment…the statutory preferences for remedies…will be addressed by the final response action. Subsequent actions are planned to fully address the threats posed by the conditions at this site." The 1997 IROD expressly contemplated a five-year review,

1  noting that subsequent actions were planned to fully address the threats posed by the conditions at
2  the site.

3     39.   DTSC reviewed the IROD and concurred with the selected interim remedy. On
4  October 1, 1997, DTSC issued a Report of Completion – Removal Action Plan in recognition of
5  the EPA's signed IROD.

6     40.   On September 28, 1998, DTSC and EPA agreed to a Modesto Groundwater
7  Contamination Site State Superfund Contract, which required DTSC to pay 10% of the interim
8  remedial action costs and 100% of the maintenance costs after the SVE system was operational
9  and functional.

10    41.   In 2000, EPA contractors installed a groundwater extraction and treatment system
11 ("GWETS") and SVE system to remove PCE in that portion of the source area that had so far
12 been identified.

13    42.   On March 28, 2007, the United States of America at the request of the EPA, filed a
14 CERCLA Complaint against Defendants, in addition to Stephen C. Lyon and Rajendra Jamnadas,
15 personal representative of the Estate of Shantilal Jamnadas. At the time, DTSC had not conducted
16 any independent actions and did not intervene in this Complaint.

17    43.   On January 28, 2011, EPA lodged a consent decree with the United States Eastern
18 District Court of California pertaining to the owners of the Halford's Cleaners property, Stephen
19 C. Lyon, Suzanne S. Lyon, Russell R. Tonda, Dianne M. Tonda, and various family members of
20 the Lyons and Tondas. EPA also filed a separate consent decree pertaining to the operator of
21 Halford's Cleaners, Shantilal Jamnadas and various family members of Mr. Jamnadas. These
22 consent decrees resolved claims brought on behalf of the EPA related to releases and threatened
23 releases of hazardous substances at the Site. DTSC was not a party to those decrees.

24    44.   On July 25, 2011, DTSC issued an Imminent or Substantial Endangerment
25 Determination, which found removal or remedial action was necessary at the Halford's Cleaners
26 to protect public health or welfare or the environment due to a release or threatened release of a
27 hazardous substance.
28

45. In 2012, DTSC took over the operation and maintenance of the GWETS pursuant to the September 28, 1998 Modesto Groundwater Contamination Site State Superfund Contract and its amendments.

46. In approximately 2018, EPA determined it had sufficient information to prepare a Final Feasibility Study and make a final remedy selection. EPA determined that the interim soil gas remedy did not adequately remove residual contamination in and near the area behind Halford's Cleaners. The final remedy would enhance the existing SVE system through soil fracturing, and by adding SVE wells. The final groundwater treatment remedy the EPA selected was the existing interim groundwater treatment system.

47. On May 21, 2021, EPA issued a Final Record of Decision ("ROD"), approving a final remedy for the Site. DTSC reviewed a pre-final version of the Final ROD and concurred with the Selected Remedy in a letter to EPA dated May 5, 2021.

### DTSC Activities at the Site

48. DTSC is the lead agency for the State of California and has been the primary support agency during the Remedial Investigation and Feasibility Study process for Halford's Cleaners. In accordance with 40 C.F.R. § 300.500, DTSC has actively participated in the decision-making process, and has provided EPA with input.

49. On July 5, 2012, DTSC took over operation and maintenance ("O&M") of the GWETS for Halford's Cleaners as required by the September 28, 1998 Modesto Groundwater Contamination Site State Superfund Contract and its amendments. Such continuing operations and maintenance entail vault plumbing, electrical installation, and repair/replacement of equipment and testing. Once the transfer was effectuated, DTSC was solely responsible for funding O&M activities.

50. In January 2024, DTSC took over groundwater monitoring for the Site.

51. Plaintiffs anticipate that EPA will transfer operation and maintenance of the SVE operation to DTSC in the future, which will cause DTSC to incur additional costs.

52. DTSC's actions at the Halford's Site, including O&M of the groundwater treatment system and groundwater monitoring, are "response" actions, as that term is defined in section

101(25) of CERCLA, 42 U.S.C. section 9601(25), related to the release and/or threatened release of hazardous substances at the Site.

53. As a result of taking response actions at the Site, Plaintiffs have incurred response costs related to the release and/or threatened release of hazardous substances at, around, and/or beneath the Site.

54. Funds that DTSC paid to EPA as required by CERCLA section 104(c)(3) are also recoverable response costs.

55. Plaintiffs' unpaid costs related to the Site from July 1987 to the present exceed $7 million, exclusive of interest. Plaintiffs expect to continue to incur additional response costs related to the release and/or threatened release of hazardous substances at, beneath, and/or from the Site.

56. Plaintiffs have incurred and will continue to incur substantial response costs in taking actions to investigate, remediate, and monitor the PCE in the soil and groundwater at the Site, and to restore the property that Defendants owned and operated during the releases of PCE. DTSC has not completed all of its response and/or corrective actions at the Site. DTSC has not certified its response and/or corrective actions at the Site. Cal. Health & Safety Code § 79730.

**FIRST CLAIM FOR RELIEF**

(Claim for Recovery of Response Costs

Pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a))

(Against All Defendants)

57. Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs as though fully set forth herein.

58. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides that the owner and/or operator of a facility, any person who arranged for disposal or treatment of hazardous substances to a facility, or any person who accepted any hazardous substances for transport to disposal or treatment facilities, from which there is a release, or a threatened release which causes the incurrence of response costs, shall be liable for all costs of removal or remedial action incurred by

a State not inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan ("National Contingency Plan"), 40 C.F.R. Part 300.400.

59. The Site, including Halford's Cleaners and the horizontal and vertical extent of the hazardous substances contamination, including any area where any hazardous substance from Halford's Cleaners has come to be located, is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9). The hazardous substances that have been released from Halford's Cleaners have contaminated the Site.

60. Each of the Defendants is a "person" within the meaning of section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

61. Plaintiffs are a "State" for purposes of recovery of response costs under section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Under this section, Plaintiffs may also recover interest on response costs incurred.

62. Each of the Defendants are a current "owner" and/or "operator" of Halford's Cleaners as well as a "person" who "owned" and/or "operated" Halford's Cleaners "at the time of disposal of hazardous substances" at and from Halford's Cleaners under section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), which contaminated the Site. Releases of hazardous substances at and from Halford's Cleaners, which contaminated the Site, occurred during Defendants' ownership of the Site.

63. There has been a release and/or threatened release of hazardous substances from Halford's Cleaners into the environment, within the meaning of sections 101(8) and 101(22) of CERCLA, 42 U.S.C. §§ 9601(8) and 9601(22).

64. Plaintiffs have incurred response costs as the result of the release and/or threatened release of hazardous substances at the Site. DTSC incurred costs both to fulfill its obligations to EPA under CERCLA section 104, 42 U.S.C. § 9604, and to mitigate the harm from hazardous substances remaining at the Site. DTSC's costs were not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300, within the meaning of section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

65. Each of the Defendants are jointly and severally liable, without regard to fault, pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for Plaintiffs' response costs incurred as a result of the release and/or threatened release of hazardous substances at the Site. Pursuant to section 107(a) of CERCLA, each of the Defendants are also liable for interest accrued on Plaintiffs' response costs.

66. Pursuant to section 107(a) of CERCLA, each of the Defendants are also liable for interest accrued on Plaintiffs' response costs.

**SECOND CLAIM FOR RELIEF**

(Claim for Declaratory Relief Pursuant to

Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2))

(Against All Defendants)

67. Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs as though fully set forth herein.

68. Under section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), Plaintiffs are entitled to a declaratory judgment that each of the Defendants are jointly and severally liable to Plaintiffs for any response costs Plaintiffs have incurred and for any further response costs Plaintiffs incur in the future as a result of any release and/or threatened release of hazardous substances at the Site.

**THIRD CLAIM FOR RELIEF**

(Claim for Recovery of Costs Pursuant to the HSAA,

California Health and Safety Code section 79650)

(Against All Defendants)

69. Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs as though fully set forth herein.

70. Pursuant to section 79650 of the California Health and Safety Code, Plaintiffs may bring an action against responsible parties to recover all costs Plaintiffs have incurred in carrying out or overseeing a response or corrective action as a result of any release or threatened release of a hazardous substance at the Site.

71. The release and/or threatened release of hazardous substances has occurred at the Site, as defined by California Health and Safety Code section 78105.

72. Plaintiffs have incurred response costs in carrying out or overseeing response actions addressing the releases and/or threatened releases of hazardous substances at the Site, as defined in California Health and Safety Code section 78135.

73. Each of the Defendants are liable persons as defined in section 78085 of the California Health and Safety Code.

74. To the extent any portion of Plaintiffs' response costs are not recovered pursuant to the First Claim for Relief, each of the Defendants are liable to Plaintiffs under section 79650 of the California Health and Safety Code for such costs incurred by Plaintiffs.

75. Under sections 79650 and 79655 of the California Health and Safety Code, Defendants are liable to Plaintiffs for interest at the rate provided by law on any costs that may be recovered under the HSAA.

**FOURTH CLAIM FOR RELIEF**

(Claim for Abatement of Release or Threatened Release

Pursuant to the HSAA, California Health and Safety Code section 78870)

(Against All Defendants)

76. Plaintiffs re-allege and incorporate by reference the allegations in paragraphs as though fully set forth herein.

77. This Court has jurisdiction over state law claims for injunctive relief pursuant to 28 U.S.C. § 1367 subd. (a).

78. California Health and Safety Code section 78870(c) provides that:

> Whenever the director determines that there may be an imminent or substantial endangerment to the public health or welfare or to the environment, because of a release or a threatened release of a hazardous substance, the director may do any of the following:
> * * *
> (c) Request the Attorney General to secure such relief as may be necessary from the responsible party to abate the danger or threat. …Upon a showing by the department that a release or threatened release of a hazardous substance has

13

occurred or is occurring, and that there may be an imminent or substantial endangerment to the public health and safety or to the environment, the court may grant a temporary restraining order or a preliminary or permanent injunction pursuant to subdivision (a) of Section 78660.

79. California Health and Safety Code section 78660(a) provides, in relevant part:

Whenever there is a release or threatened release of a hazardous substance, the director may request the Attorney General to secure such relief as may be necessary from the responsible party to abate the release or threatened release. … Upon a showing by the department that a release or threatened release of a hazardous substance has occurred or is occurring, and that there may be an imminent or substantial endangerment to the public health and safety or to the environment, the court may grant a temporary restraining order or a preliminary or permanent injunction.

80. California Health and Safety Code section 78660(c) provides in relevant part:

It shall not be necessary to allege or prove at any stage of the proceeding that irreparable damage will occur should the temporary restraining order or the preliminary or permanent injunction not be issued, or that the remedy at law is inadequate. The temporary restraining order or the preliminary or permanent injunction shall issue without those allegations and without that proof.

81. DTSC's Director has determined that there may be an imminent or substantial endangerment to the environment or to the public health or welfare, because of the release or threatened release of hazardous substances at the Site.

82. In accordance with California Health and Safety Code sections 78660 and 78870, DTSC has requested that the Attorney General secure relief from each Defendant necessary to abate the danger or threat to public health and safety and to the environment from the Site.

83. Defendants are "Responsible parties" within the meaning of California Health and Safety Code section 78870. *See also* 42 U.S.C. § 9607(a).

84. Pursuant to California Health and Safety Code sections 78660 and 78870, DTSC is entitled to such relief as may be necessary from Defendants to abate the danger or threat, including preliminary and permanent injunctive relief to require Defendants to take actions necessary to abate the release and/or threatened release of hazardous substances at the Site

causing an imminent or substantial endangerment to the public health and safety or to the environment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For a judgment that Defendants are jointly and severally liable to Plaintiffs under section 107(a) of CERCLA, 42 U.S.C. § 9607(a) for all unreimbursed response costs incurred by Plaintiffs responding to releases and/or threatened releases of hazardous substances at the Site, in an amount to be proven at trial, including interest attorneys' fees and other enforcement costs;

2. For interest to be paid to Plaintiffs on the above sum as provided under section 107(a) of CERCLA, 42 U.S.C. § 9607(a);

3. For a declaratory judgment, pursuant to 28 U.S.C. § 2201 and section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that each of the Defendants are jointly and severally liable without regard to fault to Plaintiffs for all future response costs incurred by Plaintiffs responding to the release and/or threatened release of hazardous substances at the Site;

4. In the alternative to the CERCLA section 107(a) claim and only to the extent a portion of Plaintiffs' response costs are not recovered pursuant to that claim, for a judgment that each of the Defendants are liable to Plaintiffs under section 79650 of the HSAA, for response costs incurred by Plaintiffs responding to the release and/or threatened release of hazardous substances at the Site, in an amount to be proven at trial, including interest pursuant to California Health and Safety Code section 79655;

5. For preliminary and/or permanent injunctions pursuant to California Health and Safety Code sections 78870 and 78660 requiring Defendants to abate the release or threatened release of hazardous substances at the Site;

6. For costs of this suit; including attorney's fees; and

//
//
//
//

7. For all other relief the Court deems just and appropriate.

Dated: February 26, 2026

Respectfully submitted,

R<small>OB</small> B<small>ONTA</small>
Attorney General of California
V<small>ANESSA</small> C. M<small>ORRISON</small>
Supervising Deputy Attorney General

/s/ *Rafael J. Hurtado*
R<small>AFAEL</small> J. H<small>URTADO</small>
J<small>AMES</small> P<small>OTTER</small>
Deputy Attorneys General
*Attorneys for Plaintiff*
*California Department of Toxic Substances Control and the Toxic Substances Control Account*